UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

*In re*:

MICHAEL ERWIN ACUNA,

Debtor.

Case Number: 21-11517-7

MICHAEL ERWIN ACUNA,

Plaintiff,

v.

ILLINOIS DEPARTMENT OF REVENUE
and INTERNAL REVENUE SERVICE,

Defendants.

Adversary Number: 21-00034

**DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT ILLINOIS DEPARTMENT OF REVENUE'S CROSS-MOTION FOR SUMMARY JUDGMENT WITH REGARD TO COUNTS II, III, AND IV OF THE SECOND AMENDED COMPLAINT**

Plaintiff, Michael Erwin Acuna ("Debtor"), filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. He initiated an adversary proceeding against both the Internal Revenue Service and the Illinois Department of Revenue (IDOR). He then filed a Second Amended Complaint ("Complaint"). Counts II, III, and IV of that Complaint pertain only to IDOR.

Before this Court are cross-motions for summary judgment relating to Counts II through IV. These are not straightforward motions. Each of the three counts against IDOR involves a slightly different set of facts, legal theories, and defenses. An extensive series of complaints, amended complaints, answers, stipulations of facts, and briefings have been submitted by the parties. At the

core of the cross-motions for summary judgment, though, are Debtor's Illinois state income taxes and tax returns for 2016, 2017, and 2018. Debtor currently resides in Wisconsin, but previously lived in Illinois. Different issues arise for each of the 2016 through 2018 Illinois state income taxes, and so the pertinent facts surrounding each tax year are discussed separately.

For the reasons below, neither side is entirely correct. The Court GRANTS summary judgment in part and DENIES summary judgment in part.

**Debtor's 2016 Illinois Income Taxes**

Debtor has unpaid Illinois individual income taxes for 2016. As provided by 35 ILL. COMP. STAT. 5/1101(a), "Lien for Tax," unpaid Illinois income taxes result in a statutory lien "upon all property and rights to property, whether real or personal, belonging to such person." Under subsection (d) of the same statute, the lien terminates unless a notice of lien is filed. If a notice of lien is filed, the tax lien is perfected. Specifically, 35 ILL. COMP. STAT. 750/1-20(a) provides that

> [w]hen a notice of tax lien is filed by the Department in the registry, the tax lien is perfected and shall be attached to all of the existing and after-acquired: (1) personal property of the debtor, both tangible and intangible, which is located in any and all counties within the State of Illinois; and (2) real property of the debtor located in the county or counties as specified in the notice of tax lien.

Further, 35 ILL. COMP. STAT. 5/1104, "Duration of Lien," states that "[t]he lien provided herein shall continue for 20 years from the date of filing the notice of lien . . . unless sooner released, or otherwise discharged."

On August 13, 2019, IDOR did file a Notice of Tax Lien in the Illinois State Registry for unpaid 2016 income taxes of the Debtor. The lien was filed in

2

Sangamon County, Illinois. Both parties agree, however, that the Debtor does not have any personal property in the state of Illinois, nor has the Debtor ever owned real property in Sangamon County, Illinois.

**Debtor's 2017 Illinois Income Taxes**

The Debtor also has unpaid Illinois individual income taxes for 2017. On August 13, 2019, IDOR also filed a Notice of Tax Lien in the Illinois State Registry for unpaid 2017 income taxes of the Debtor. This lien was also filed in Sangamon County, Illinois.

Further, though the Debtor timely filed his 2017 Illinois Individual Income Tax Return, he also filed an amended federal income tax return for his 2017 taxes (Form 1040X) in November 2018. Debtor filed an amended return to report items on a Schedule K-1 the Debtor received from a partnership. The IRS accepted the return on January 7, 2019. This acceptance triggered Illinois tax reporting requirements. Under 35 ILL. COMP. STAT. 5/506(b), Debtor needed to notify IDOR of the federal change in income by May 7, 2019. The Debtor did timely notify IDOR of the federal change by filing an amended Illinois Income Tax Return in February 2019. The amended return was accepted by IDOR, and after a correction of the Debtor's amended return, IDOR reported an AGI of $358,942 and a tax amount due of $13,560.

**Debtor's 2018 Illinois Income Taxes**

The Debtor timely filed his original 2018 Illinois Individual Income Tax Return, in which he incorrectly reported his Wisconsin sourced wage income as taxable income. As a result of this error, IDOR assessed a tax liability in the

3

amount of $930, plus statutory interest and penalties. In May 2021, the Debtor filed an amended 2018 Illinois Individual Income Tax Return in which he corrected the return to exclude the Wisconsin sourced income from taxable income. IDOR has since accepted the Debtor's amended return, and the Debtor's tax liability for 2018 Illinois income tax has been adjusted to zero.

**Cross-Motions for Summary Judgment**

Both the Debtor and IDOR filed motions for summary judgment relating to Counts II through IV. While the details and merits of the motions will be detailed later, they are summarized as follows:

**Count II:** Count II relates to the 2016 and 2017 tax liens. Count II is a claim for lien avoidance pursuant to 11 U.S.C. § 506(d). Debtor argues that the 2016 and 2017 tax liens are void because they attached to no property, real or personal, at the time of their creation. Debtor does not have any personal property in the state of Illinois, nor has the Debtor ever owned real property in Sangamon County, Illinois. So at the time of the lien's creation, there was no property to which the lien attached. Debtor thus asks this Court to grant summary judgment in his favor and determine that under 11 U.S.C. § 506(d) the "Defendant does not have an allowable secured claim due to the failures of the statutory lien to attach to any property of the Debtor and to therefore even come into existence."

In response, IDOR argues this Court should deny Debtor's request to the extent that this Court determines under Count IV that the 2017 Illinois income

tax liability is not discharged. Further, in its own cross-motion for summary judgment, IDOR requests that Count II be dismissed for failure to state a claim upon which relief can be granted. While IDOR concedes that the value of IDOR's interest might currently be zero, IDOR argues its liens exist for 20 years and attach to any after-acquired property pursuant to 35 Ill. Comp. Stat. 5/1104. So while the Debtor may have no current property in Illinois or may have no intention of returning to Illinois, there is no way to state with certainty that the Debtor will not obtain or bring property into Illinois in the next 17 years. Thus, it says, the value of the liens cannot be stripped off, IDOR still holds valid liens, and so Debtor fails to state any grounds for lien avoidance under section 506(d).

**Count III:** Count III relates to Debtor's 2018 Illinois individual income tax liability. In his Second Amended Complaint, Debtor asks the Court to determine and declare the amount of his 2018 Illinois individual tax to be zero.

Debtor's request relating to Count III in his Motion for Summary Judgment is unclear. In the title of Debtor's brief, he moves for summary judgment on Count III. However, in the Debtor's brief in support of his Motion for Summary Judgment, Debtor notes that IDOR's answer to Debtor's Complaint concedes the amount claimed as of the petition date has been reduced to zero and that "this brief will address only the issues presented by Counts II and IV."

In its objection, IDOR argues that Debtor's brief "essentially acknowledges that the issue is moot as IDOR has reduced the liability for the

5

period to zero" and requests the motion be denied to the extent that it seeks judgment under Count III. In its own Motion for Summary Judgment, IDOR reasserts its view that the issue is moot but further argues that Count III must be dismissed for lack of subject-matter jurisdiction. The Debtor believes this Court does have jurisdiction to determine the Debtor's tax liability.

**Count IV:** Plaintiff asks the Court in Count IV to determine and declare that the 2017 unpaid Illinois income tax claims are not eighth priority tax claims, do not fall within any 11 U.S.C. § 523 exception to discharge, and are general unsecured claims that have been discharged. IDOR argues that they do fall under section 523(a)(1)(B) and are thus nondischargeable. At the core of the dispute is whether the amended return Debtor filed to notify IDOR of his federal change in income is a return. The Debtor says it is not. IDOR contends it is. As discussed below, Debtor also advances an argument about the 2016 taxes in his Motion.

In its cross-motion, IDOR moves for summary judgment on Count IV because it believes the federal change notification is a return and falls under section 507(a)(8)(A)(i), making this debt nondischargeable under section 523.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(a). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The matter before the Court relates to lien avoidance and nondischargeability. It falls within "matters concerning the administration of the estate" and "other

6

proceedings affecting the liquidation of the assets of the estate" and is thus a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

## DISCUSSION

### A. Summary Judgment Standard

The summary judgment standard under Rule 56 is familiar: summary judgment may be entered when there is no genuine issue of any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a) (made applicable by FED. R. BANKR. P. 7056); *Velez v. City of Chicago*, 442 F.3d 1043, 1047 (7th Cir. 2006). Summary judgment is not a paper trial. As noted by the Court in *Anderson v. Liberty Lobby, Inc.*, the Court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The Court has one task and one task only: to decide, based on the record, whether there is any material dispute of fact that requires a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *see also Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003). The Court must view all facts and indulge all inferences in the light most favorable to the defendant and determine whether there is a genuine issue for trial.

If the plaintiff makes out a prima facie case that there is no genuine issue of material fact, then the defendant must present evidence to show there is a genuine issue for trial. This evidence does not have to be "in a form that would be admissible at trial in order to avoid summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The nonmoving party may oppose

7

the motion by "any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Id.*

### B. Count II: Section 506(d) Lien Avoidance

Debtor argues that he is entitled to summary judgment on Count II because IDOR does not have a validly enforceable lien against the Debtor. Debtor claims he owned neither personal property nor real estate in Illinois when the 2016 and 2017 tax liens arose, and as such there was nothing for the liens to attach to. As a result, the liens are unenforceable and may be avoided under section 506(d) of the Bankruptcy Code.

IDOR does not say that Debtor owned any property at the time the 2016 and 2017 tax liens arose and concedes that Debtor may not currently own any property in the state of Illinois. Still, IDOR argues it has validly enforceable liens that may not be stripped because, under 5 ILL. COMP. STAT. 750/1-20, a properly filed tax lien notice attaches to any after-acquired property of the debtor. The statute states:

> When a notice of tax lien is filed by the Department in the registry, the tax lien is perfected and **shall be attached to all of the existing and after-acquired**: (1) personal property of the debtor, both tangible and intangible, which is located in any and all counties within the State of Illinois; and (2) real property of the debtor located in the county or counties as specified in the notice of tax lien (emphasis added).

And IDOR notes that under section 1-25 of the same statute, the lien exists for 20 years from the date of filing the notice of a tax lien. IDOR therefore argues that even if the Debtor did or does not currently own property in Illinois, because the notice of IDOR's lien was properly filed and exists for 20 years,

8

IDOR's lien will attach to any property the Debtor acquires or brings into the state of Illinois within the next 17 years.

This Court agrees with the Debtor's understanding of the requirements for attachment. For any lien to attach—be it a judgment lien, a statutory lien, or a lien created via a security agreement—the Debtor must have rights in the collateral. A debtor does not have rights in collateral that does not yet exist. As a result, attachment to after-acquired property does not occur until after the property is actually acquired. There is no evidence before the Court that any of Debtor's disclosed property was property in Illinois—real or personal—from the time of the petition date to the time the Debtor received a Chapter 7 discharge. This is important because, under section 506(a)(1) of the Bankruptcy Code, for a creditor's claim to be treated as an allowed secured claim, the creditor's claim must be secured by a lien in property of the estate. After a Debtor receives a discharge, property of the estate revests in the Debtor. Thus, for IDOR to hold an allowed secured claim in Debtor's bankruptcy, it must be secured by the time the Debtor receives a discharge. In other words, IDOR must have a lien on property of the estate.

Based on the record as well as the Debtor's current schedules, IDOR has not shown that it has any lien on any property of the estate. There is thus no genuine issue on the question of whether IDOR has a valid lien in any of Debtor's disclosed property. So this Court grants summary judgment in favor of the Debtor, holding that IDOR does not hold an allowed secured claim with

respect to any of Debtor's disclosed property. As a result, IDOR's lien may be avoided on such disclosed property under section 506(d).

But this determination is confined to the property the Debtor has disclosed as property of the estate. If it is later determined that Debtor had undisclosed property from the petition date to the time the Debtor received his discharge that falls under the requirements of 5 ILL. COMP. STAT. 750/1-20 and is thus property IDOR's lien would have attached to, IDOR's liens on such property for the 2016 and 2017 tax years are valid, allowed, and may not be voided under section 506(d).

### C. Count III: Debtor's 2018 Tax Liability

Under Count III, Debtor asks that this Court determine his Illinois individual income tax liability for 2018 is zero. In its answer, IDOR has conceded that it accepted the Debtor's amended return and that Debtor has no tax liability for 2018. Debtor believes he should be entitled to a summary judgment declaration stating that Debtor's tax liability is zero. IDOR, on the other hand, believes the issue is moot and should be dismissed because there is no constitutionally required case or controversy for this Court to decide. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) ("If a dispute is not a proper case or controversy, the courts have no business deciding it."). And the parties dispute whether this Court possesses subject-matter jurisdiction to decide the amount of Debtor's nondischargeable 2018 Illinois income tax liability.

10

This Court need not decide whether it has proper jurisdiction to determine the amount of Debtor's tax liability in 2018. Simply put, the parties agree on the Debtor's 2018 tax liability. It is uncontested that IDOR's claim for 2018 is zero. There is no controversy and thus no dispute that the Court need determine. Summary judgment on Count III is denied as moot and for lack of justiciability.

### D. Count IV: Dischargeability

Finally, Debtor asks the Court in Count IV to determine and declare on summary judgment that the 2017 unpaid Illinois income tax claims are not an eighth priority tax claim, do not fall within any section 523 exception to discharge, and are general unsecured claims that have been discharged. In response, the IDOR argues that these income tax claims fall under section 523(a)(1)(A) and are therefore nondischargeable.

Under section 523(a)(1)(A) of the Bankruptcy Code, a discharge under section 727 does not discharge a debtor from a debt for a tax listed as priority under section 507(a)(8). Here, the only potentially applicable provision of section 507(a)(8) is section 507(a)(8)(A)(i), which provides for the nondischargeability of a "tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition . . . for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition."

There are thus three requirements for an income tax debt to fall under section 507(a)(8)(A)(i): First, it must be a debt for a taxable year ending on or

11

before the petition date. Second, the debtor must be required to file a "return" for that tax debt. Third, that "return" must be last due, including extensions, after three years before the petition date. The first requirement is satisfied: the taxable year is 2017, which was prepetition. It is also undisputed that the return "was last due . . . after three years before the petition date." The return was last due in May 2019 and Debtor filed his chapter 7 petition in July 2021. As a result, the final requirement, whether the federal change is a "return," will turn on the applicable provisions of the Illinois Income Tax Act (IITA).

### 1. *Is the federal change notification a required return?*

When a taxpayer is required by 35 ILL. COMP. STAT. 5/506(b) to notify IDOR of a federal change affecting the computation of Illinois income tax, the statute requires that that notice be provided as follows:

> Such **notification shall be in the form of an amended return** or such other form as the Department may by regulations prescribe, shall contain the person's name and address and such other information as the Department may by regulations prescribe, shall be signed by such person or his duly authorized representative, and shall be filed not later than 120 days after such alteration has been agreed to or finally determined for federal income tax purposes or any federal income tax deficiency or refund, tentative carryback adjustment, abatement or credit resulting therefrom has been assessed or paid, whichever shall first occur (emphasis added).

In other words, 35 ILL. COMP. STAT. 5/506(b) requires that a taxpayer notify IDOR of a federal change income tax liability either by filing an amended return or such other form IDOR or other regulations may require. IDOR has not specified any other form of notification other than an amended return. So the statute is clear that in order to report a change in income tax liability, the

taxpayer must file the appropriate amended individual tax return form, which in this case is a Form 1040-X.

Debtor makes three main arguments, however, as to why he believes the notice of the federal change is *not* a return. For the reasons below, all three arguments fall short.

- **Argument #1: A federal change notification is not a return because there is a difference between a notification in the "form of an amended return" and an "amended return itself."**

Debtor's first argument is that a taxpayer's notification of a federal change does not constitute a return. He suggests there is a difference between a "notification" that takes the form of an amended return and a return itself. This argument fails. Debtor concedes that, under 35 ILL. COMP. STAT. 5/506(b), if there is a change in a federal return or assessment, a taxpayer must tell IDOR about this change. The means by which a taxpayer notifies IDOR of this change is by filing an amended return. In a tortured analysis, Debtor argues that despite the fact he submitted an amended return, that return should not be treated as an actual return, but instead as just some other form of notification.

Debtor attempts to piece together support for this argument based on multiple paragraphs in section 100.9200 of the Illinois Administrative Code. Those provisions begin with the initial assessment of tax liability based on the date of the filing of a taxpayer's tax return. The section then acknowledges that various events may affect the amount and timing of assessments. Those events include mathematical errors, notice of deficiencies in reviewing the return, or

13

changes in the computation of federal tax returns. The regulations set out procedures under which the initial assessment might be changed by any of those events. If, for example, IDOR identifies an error on the initial return, IDOR provides notice to the taxpayer who has the opportunity to respond. Similarly, if the taxpayer notices an error or is notified of changes with respect to the taxpayer's federal income tax return, the taxpayer is obligated to amend the return to provide IDOR notice of the change. A taxpayer prepares, signs, and files an amended return. The fact that there are different processes for updating or amending the returns by the taxpayer, depending on what triggers the change, does not modify the fact that the notification is a tax return. An amended return is a tax return.

- **Argument #2: A federal change notification is not a required return because it does not have to be signed under penalty of perjury.**

Debtor also believes a federal change notification is not an Illinois return because it does not have to be signed under penalty of perjury. Debtor argues the following: Section 504 of the IITA, titled "Verification," requires that every "return and notice be signed under penalties of perjury." But section 506(b) of the IITA requires that the federal change notification "be signed by such person or that individual's duly authorized representative." So Debtor argues there is no requirement that the federal change notification be signed under penalty of perjury under section 506(b). This, therefore, distinguishes the federal change notification from a return according to the Debtor.

14

Debtor's interpretation of section 506(b) is incorrect as it does not fully consider the requirements of this provision. It is true that the text of section 506(b) does not explicitly require that a federal change notification be signed under penalty of perjury. However, section 506(b) requires that a taxpayer notify IDOR of a federal change in income tax liability by filing an amended return. An amended return *is* signed under penalty of perjury. In other words, a federal change notification, like any other amended return, must be signed under penalty of perjury by the taxpayer or the authorized representative. Indeed, Debtor admits the Form 1040-X he submitted to report his federal change in 2017 income tax liability was signed under penalty of perjury. *See* Case No. 1-21-0034-cjf, Dkt. No. 23, Exh. 9. Therefore, Debtor's reading of section 506(b) also fails to demonstrate how an amended return filed to report a federal change notification is not an actual return.

- **Argument #3: There is a difference between a "notice" and a "notification."**

Finally, Debtor tries to distinguish between a "notice" and a "notification." Debtor argues that because section 504 requires a "notice" must be signed under penalty of perjury and not a "notification," and the word "notification" is used in section 506(b), the federal change notification must not fall under section 504. And because it does not fall under section 504, which governs the signing of returns and notice, this creates another distinction between a return and the federal change notification. While the IITA does not define "notice" or "notification," this argument falls short. Simply looking at the

dictionary negates this argument. For example, Merriam-Webster defines *notification* as "a written or printed matter that gives notice." Debtor has not advanced any argument or evidence showing any meaningful distinction between the words "notice" and "notification."

The Debtor has not met his burden to be entitled to summary judgment on this issue and thus this Court denies Debtor's request for summary judgment on Count IV.

On the contrary, IDOR has shown there is no issue of material fact with respect to the question of whether the federal change notification is a return. As IDOR argues, the Illinois statutes are clear: to report a federal change notification, a taxpayer must file an amended return. The federal change notification is, therefore, an amended return. Because the Debtor's unpaid income taxes for 2017 is for a debt for a taxable year ending on or before the petition date and the Debtor's amended return was last due, including extensions, after three years before the petition date, it is a debt that falls under section 507(a)(8)(A) and is therefore nondischargeable pursuant to 523(a)(1)(A). As a result, this Court grants summary judgment in favor of IDOR on this issue.

Finally, this Court denies Debtor's request for leave to amend his Motion for Summary Judgment. To date this Debtor has filed: two amended complaints, a motion to extend time to file his reply briefs to his own motions for summary judgment, a separate *Citation to Additional Authority* as part of one his briefs, and a typographically corrected reply to one of the responses to

Debtor's Motion for Summary Judgment—a corrected reply filed almost *one month* after the original reply was filed. This Court has deadlines. These deadlines are not suggestions. This Court will not allow the Debtor to continue to flood this adversary proceeding's docket with countless amendments and extensions.

- **Argument #4: The 2016 taxes should also be discharged.**

There is an ancillary issue related to dischargeability: Count IV of Debtor's Second Amended Complaint makes no reference to the dischargeability of the 2016 unpaid Illinois income tax claims. Despite the omission of any request for such a determination in the Complaint, Debtor's Motion for Summary Judgment makes such an argument. IDOR objects, stating that Debtor cannot raise this issue for the first time on summary judgment. In response, Debtor agrees with IDOR that the "placement of the reference to the *2016* tax year within Plaintiff's argument re: Count IV" should have instead been situated within the argument on Count II. So, buried in the middle of his response to IDOR's reply to Debtor's Motion for Summary Judgment, Debtor requests leave of Court to file an amended motion for summary judgment reflecting this reorganization.

Debtor's brief and proposed findings attempt to convince the Court he is entitled to summary judgment declaring the 2016 taxes are dischargeable. ECF No. 37, p. 4, and ECF No. 38, p. 11, ¶¶53-54. The Complaints filed do not ask for such a judgment. At most, the undisputed facts demonstrate the 2016 tax returns were first due April 15, 2017. If timely filed and not subject to any

17

amendment or other basis to challenge the return, then such return would have been due more than two years before the petition date. *See* 11 U.S.C. § 523(a)(1)(B)(ii). In any event, the dischargeability of the 2016 taxes is not properly before the Court.

### Conclusion

For all these reasons, this Court orders as follows:

1. This Court GRANTS Debtor's Motion for Summary Judgment, in part, on Count II. This Court declares IDOR does not hold an allowed secured claim with respect to any of Debtor's disclosed property and so IDOR's lien may be avoided with respect to such disclosed property under section 506(d) only;

2. This Court DENIES IDOR's motion to dismiss Count II for failure to state a claim upon which relief may be granted;

3. This Court DENIES Debtor's Motion for Summary Judgment on Count III as moot and GRANTS IDOR's motion to dismiss Count III for a lack of justiciability;

4. This Court DENIES Debtor's Motion for Summary Judgment on Count IV and GRANT's IDOR's Motion for Summary Judgment on Count IV.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: July 29, 2022

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge
